Mary Ann Barrella et al., Appellants, v Richmond Memorial Hospital, Defendant, and Harvey R. Leventhal et al., Respondents.

Second Department, August 16, 1982

#### APPEARANCES OF COUNSEL

*Chelli & Bush* (*Edmund L. Rothschild* of counsel), for appellants.

*Martin, Clearwater & Bell* (*Robin F. Zwerling* and *Timothy J. McGinn* of counsel), for respondents.

#### OPINION OF THE COURT

Lazer, J.

Under the continuous treatment doctrine, "the time in which to bring a malpractice action is stayed 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint'" (*McDermott v Torre,* 56 NY2d 399, 405, quoting *Borgia v City of New York,* 12 NY2d 151, 155). Asserting that in the instant case the treatment was continuous despite the fact that eight and one-half months intervened between treatments, plaintiffs seek reversal of an order which dismissed their malpractice action as against respondents as time barred. We agree with Professor (now Judge) McLaughlin's observation that the continuous treatment issue can be "troublesome"

(McLaughlin, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 214-a, p 148, 1981-1982 Pocket Part) and we cannot dispose of this appeal without returning to the fundamental precepts of "continuous treatment" theory.

The summons and complaint in the action were filed with the County Clerk of Richmond on August 10, 1978, with service the next day on defendants Concord Neurological and Neurosurgical Associates, P. C., and Dr. Harvey R. Leventhal, a member of Concord. Since a third defendant, Richmond Memorial Hospital, has answered separately and is not involved in this appeal, the "defendants" we refer to here are Concord and Leventhal and not the hospital. Since the malpractice is alleged to have occurred prior to July 1, 1975, the three-year Statute of Limitations contained in CPLR 214 (subd 6) applies to this case (see *McDermott v Torre,* 56 NY2d 399, *supra; Frew v Hospital of Albert Einstein Coll. of Medicine Div. of Montefiore Hosp. & Med. Center,* 76 AD2d 826).[1]

Prior to the recent holding in *McDermott v Torre* (*supra,* decided June 15, 1982), continuous treatment dogma dealt with deferral of the accrual date of the malpractice cause of action (see, e.g., *Greene v Greene,* 56 NY2d 86; *Davis v City of New York,* 38 NY2d 257; *Borgia v City of New York,* 12 NY2d 151, *supra*), but the *McDermott* court concluded that continuous treatment simply tolls the Statute of Limitations. Since the brain tumor operation at the root of the instant case took place in January, 1975, and service of process occurred in August of 1978, more than three years later, the action is time barred unless certain treatments received by the patient in January and February, 1976, can be deemed continuous to those received eight and one-half months earlier. It is the plaintiffs' burden to establish the continuous nature of the later treatments (see *Connell v Hayden,* 83 AD2d 30, 39).

---

1. CPLR 214-a, which codified the doctrine of continuous treatment, reduced the medical malpractice Statute of Limitations to two and one-half years and is "applicable to any act, omission or failure occurring on or after [July 1, 1975]" (L 1975, ch 109, § 37). Since the new statute does not apply to this case, the issues must be determined under the common law (see *Borgia v City of New York,* 12 NY2d 151).

Although defendants did not cross-move for dismissal in response to plaintiffs' motion to dismiss the Statute of Limitations defense, Special Term elected to treat the defendants' affirmation in opposition as such a cross motion (CPLR 3211, subd [a], par 5) and ordered an immediate trial of the limitations issue (see CPLR 3211, subd [c]). Jury trial of the issue (see, e.g., *Fonda v Paulsen,* 46 AD2d 540, 545) was waived by the parties' failure to demand a jury prior to the commencement of the trial (see CPLR 2218; see, also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:48, p 52), which the court then conducted.

At the trial, plaintiffs focused on events they do not now proffer.[2] As a consequence, their current contentions are based on facts largely adduced by the defendants — Dr. Leventhal was the sole witness. Those facts established that plaintiff Mary Ann Barrella was first treated by Dr. Leventhal on January 7, 1975, when he saw her at his office and arranged to have her admitted to St. Vincent's Hospital. On January 13, 1975, he performed surgery to remove a tumor on her brain, after which she remained in the hospital until discharged on January 23, 1975. On February 27, 1975, Mrs. Barrella, who is alleged to have been suffering numerous postoperative effects, visited Dr. Leventhal at his office and, upon his advice, re-entered the hospital for a jaundice condition related to the tumor surgery. She remained under his care until March 14, 1975, when she was transferred to the care of an internist, but Dr. Leventhal continued to see her at the hospital until her discharge on April 15, 1975. He next treated Mrs. Barrella at his office on May 13, 1975, and recommended that she return for another visit but this she failed to do.

There was no further contact between the two principals until eight and one-half months later when Dr. Leventhal saw Mrs. Barrella at Richmond Memorial Hospital on January 30, 1976, one day after she had been admitted

---

**2.** They relied, for instance, upon an electroencephalogram report prepared by Dr. Leventhal in July, 1977, at the request of Richmond Memorial Hospital. The underlying examination had been ordered by another physician who had assumed the care of the patient and Dr. Leventhal teatified that his "group reads the electroencephalograms no matter who orders them from Richmond Memorial Hospital."

through the emergency room without his having been consulted either by her or any member of her family. The only evidence as to how Dr. Leventhal came to treat the woman again derives from notations in the hospital record that the hospital notified him of her presence in the institution. In any event, Mrs. Barrella refused to allow the tests, work up or therapy Dr. Leventhal recommended, although she did take the medication he prescribed. On February 6, 1976, Dr. Leventhal signed a discharge summary relating to this patient and did not treat her after that day even though she remained at the hospital until February 11, 1976. Neither Mrs. Barrella nor any member of her family testified at the trial, leaving the testimonial arena entirely to Dr. Leventhal.

Special Term denied the motion to strike the Statute of Limitations defense and dismissed the complaint against the defendants. Plaintiffs moved to reargue, contending that Mrs. Barrella's course of continuous treatment extended to February 6, 1976, but Special Term denied reargument concluding that there had been no continuity of treatment after Mrs. Barrella's office visit in May, 1975. On this record, we are compelled to agree that the hospital contacts of February, 1976, did not constitute a continuation of the course of treatment which had previously terminated with the office visit of May, 1975.

The purpose of the continuous treatment exception is to ameliorate the harshness of a rule which pins accrual of a malpractice action to the date of the offending act (Lillich, Malpractice Statute of Limitations in New York and Other Jurisdictions, 47 Cornell L Q 339, 361; Lillich, Malpractice Statute of Limitations in New York's New Civil Practice Law and Rules, 14 Syr L Rev 42; 18 New York L F 491), regardless of the relationship between doctor and patient or when the malpractice was discovered. Although the commentators have recommended a rule which would fix accrual as of the date of discovery, that alternative was rejected when the Legislature failed to act on proposals submitted by the Law Revision Commission (see, e.g., 1962 Report of NY Law Rev Comm, pp 231-232; see, also, *Schwartz v Heyden Newport Chem. Corp.*, 12 NY2d 212; Lillich, Malpractice Statute of Limitations in New York's

New Civil Practice Law and Rules, 14 Syr L Rev 42). While a growing number of States now provide for claim accrual on the date of discovery or when discovery reasonably should have occurred (see 1 Louisell & Williams, Medical Malpractice, par 13.07; Malpractice Statute of Limitations in New York: Conflict & Confusion, 1 Hofstra L Rev 276), New York adheres to the traditional rule while permitting relief where foreign objects are concerned (CPLR 214-a; *Flanagan v Mount Eden Gen. Hosp.*, 24 NY2d 427) and by tolling the Statute of Limitations where continuous treatment has taken place (CPLR 214-a; *Borgia v City of New York*, 12 NY2d 151, *supra*).

The rationale for the continuous treatment exception rests on a number of doctrinal assumptions. Thus it is posited that the trust and confidence that marks the physician-patient relationship puts the patient at a disadvantage to question the doctor's techniques (*Johnson v Winthrop Labs. Div. of Sterling Drug*, 291 Minn 145, 150; *Gillette v Tucker*, 67 Ohio St 106; *Farley v Goode*, 219 Va 969, 980; see, also, *Siegel v Kranis*, 29 AD2d 477, 480), and gives the patient the right to rely upon the doctor's professional skill without the necessity of interrupting a continuing course of treatment by instituting suit (*Greene v Greene*, 56 NY2d 86, *supra; Borgia v City of New York*, *supra*, p 156; *Fonda v Paulsen*, 46 AD2d 540, 544, *supra;* 31 Fordham L Rev 842, 845). The exception not only provides the patient with the opportunity to seek corrective treatment from the doctor, but also gives the physician a reasonable chance to identify and correct errors made at an earlier stage of treatment (*McDermott v Torre*, 56 NY2d 399, *supra; Williams v Elias*, 140 Neb 656; *Farley v Goode*, *supra*).

An even more obvious rationale for the continuous treatment exception is that it salvages causes of action which otherwise would be time barred because of the latent nature of the injury (*Waldman v Rohrbaugh*, 241 Md 137; 63 Harv L Rev 1177, 1201) and it provides flexibility when there is difficulty in determining the precise moment when the injury causing act or omission took place (*Nervick v Fine*, 195 Misc 464, affd 275 App Div 1043; *Williams v Elias, supra; Schmitt v Esser*, 178 Minn 82).

Sound as some of this theoretical underpinning may seem, the applicability of the continuous treatment exception to specific factual circumstances remains unclear. We know that treatment is not "continuous" when the interval between treatments exceeds the limitations period (see *Renda v Frazer,* 75 AD2d 490; *Bennin v Ramapo Gen. Hosp.,* 72 AD2d 736), if the medical services rendered — such as annual diagnostic examinations — are discrete and complete (see *Davis v City of New York,* 38 NY2d 257, *supra;* see, also, *Charalambakis v City of New York,* 46 NY2d 785), if the treatment is for a different ailment (*Borgia v City of New York,* 12 NY2d 151, 157, *supra*), or if an examination is performed at the patient's behest to ascertain the state of his or her condition (CPLR 214-a). But with the temporal gap between treatments a factor to be considered in determining continuity (see *Fonda v Paulsen,* 46 AD2d 540, *supra*), no existing rule defines with any precision what amount of time shorter than the period of limitations may intervene without a break in continuity. Thus our instant determination does not imply that an eight and one-half month interval is excessive per se; the plaintiffs' proof is scanty and there are other circumstances beside the time gap which mandate the conclusion that continuity ended with the office visit of May, 1975.

The additional circumstances include Mrs. Barrella's disregard of the doctor's advice to return to his office, the entry into Richmond Memorial Hospital without consulting the doctor, and to a lesser degree of significance, the refusal to abide by his advice when in the hospital. If "trust and confidence" are seminal to continuous treatment philosophy, their presence in this case is sparse indeed. Latency of symptoms is not a factor here because Mrs. Barrella's medical problems were quickly apparent after her surgery. Neither was there any effort to seek corrective treatment from the doctor during the long interval following the last office visit (*McDermott v Torre,* 56 NY2d 399, *supra; Borgia v City of New York,* 12 NY2d 151, *supra; Siegel v Kranis,* 29 AD2d 477, *supra*). We conclude, then, that Dr. Leventhal's visits to the patient at Richmond Memorial Hospital constituted a resumption of treatment, not a continuation. If any intent to continue treatment or

to have the doctor undertake corrective measures existed, no testimony was offered to support it (see *Noce v Kaufman,* 2 NY2d 347, 353), and we cannot conclude that Special Term erred in dismissing the case.

Accordingly, there should be an affirmance.

DAMIANI, J. P., MANGANO and GULOTTA, JJ., concur.

Order of the Supreme Court, Richmond County, dated November 14, 1980, affirmed, without costs or disbursements.