**Lee Fontana BOBROW and Herman Bobrow, Plaintiffs,**

v.

**Angelo J. DePALO, M.D., Defendant.**

**No. 85 Civ. 2671(PNL).**

United States District Court,
S.D. New York.

Jan. 27, 1987.

Denise Dunleavy, New York City, for plaintiffs.

Stanley J. Scher, Garbarini Scher & De Cicco, New York City, for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is a medical malpractice action brought by Lee Fontana Bobrow and her husband Herman Bobrow against Angelo J. DePalo, M.D. on April 5, 1985. Dr. DePalo moves for summary judgment, contending that the Bobrows' claim accrued on July 22, 1981, and is, accordingly, time-barred. The motion is granted.

## BACKGROUND

In 1974, Mrs. Bobrow was referred to Dr. DePalo, a breast specialist, to have the fibrocystic disease of her breasts examined. Dr. DePalo saw her for the first time on January 4, 1974, and saw her five more times over the next five years. At each visit, he told her that she was in perfect health and that the lumps in her breasts were not cancer but that she should return for further examinations. On July 22, 1981, two and one half years after her prior visit, Mrs. Bobrow returned to Dr. DePalo. He gave her another negative diagnosis and told her to return "when necessary." When she returned on February 2, 1983, eighteen months later, her breast examination revealed abnormalities for the first time. She checked into a hospital, under another doctor's care, where she had a radical mastectomy of her left breast. Her new doctors diagnosed cancer, and started her on a program of chemotherapy.

On April 5, 1985, the Bobrows brought this action for medical malpractice in connection with Dr. DePalo's failure to diagnose the breast cancer in July 1981.

## DISCUSSION

In New York, actions based on allegations of medical malpractice accrue on the date the alleged malpractice takes place, *Goldsmith v. Howmedica*, 67 N.Y.2d 120, 122, 500 N.Y.S.2d 640, 641, 491 N.E.2d 1097, 1098 (1986), and must be commenced within two years and six months of accrual. N.Y.Civ.Prac.L. § 214–a (McKinney Supp. 1987). There are two exceptions to this rule. The "foreign object" exception provides that a malpractice action based on a foreign object left inside a patient during an operation accrues upon discovery. *Flanagan v. Mount Eden General Hospital*, 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969) (codified at N.Y.Civ. Prac.L. § 214–a). The "continuous course of treatment" exception tolls the statute of limitations until after plaintiff's last treatment " 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint.' " *McDermott v. Torre*, 56 N.Y.2d 399, 405, 452 N.Y.S.2d 351, 353, 437 N.E.2d 1108, 1110 (1982) (quoting *Borgia v. New York*, 12 N.Y.2d 151, 155, 237 N.Y.S.2d 319, 321, 187 N.E.2d 777, 778 (1962) (codified at N.Y. Civ.Prac.L. § 214–a)).

Once the defendant proves the affirmative defense of statute of limitations, the burden shifts to the plaintiff to establish that one of the exceptions is applicable. *Grellet v. New York*, 118 A.D.2d 141, 504 N.Y.S.2d 671, 673–74 (2d Dep't 1986). Be-

cause over two years and six months lapsed between the date the alleged malpractice occurred on July 22, 1981, and the date this action was commenced, the Bobrows' claims are time barred unless they can establish that the examinations of Mrs. Bobrow in July 1981 and February 1983 were part of a continuous course of treatment.

Under the continuous treatment exception, the term "treatment" expressly excludes "examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition." N.Y.Civ.Prac.L. § 214–a. "Continuous treatment" requires more than merely a continuing physician/patient relationship. *McDermott v. Torre,* 56 N.Y.2d 399, 405, 452 N.Y.S.2d 351, 353–54, 437 N.E.2d 1108, 1110–11 (1982); *Borgia v. New York,* 12 N.Y.2d 151, 157, 237 N.Y. S.2d 319, 322, 187 N.E.2d 777, 779 (1962). Thus, diagnostic examinations, even when conducted repeatedly over a period of time, are not a course of "treatment." *See, e.g., Otero v. Presbyterian Hospital,* 116 A.D.2d 511, 497 N.Y.S.2d 381 (1st Dep't 1986) (motion for summary judgment properly denied where parties did not establish whether visits were for purpose of diagnosis or treatment). In *Charalambakis v. New York,* 46 N.Y.2d 785, 413 N.Y.S.2d 912, 386 N.E.2d 823 (1978), an infant received too much oxygen following her premature birth. At her sixth post-discharge checkup several months later, doctors discovered that the excess oxygen had caused blindness. The Court of Appeals held that these routine examinations of a patient who appeared to be in perfect health did not constitute continuous treatment. *Id.* at 787, 413 N.Y.S.2d at 913, 386 N.E.2d at 824.

The statute of limitations runs "once a hospital or physician considers the patient's treatment to be completed and does not request the patient to return for further examination." 1 J. Weinstein, H. Korn & A. Miller, New York Civil Practice ¶ 214–a.03, at 2–321 (1984). For example, in *De-Peralta v. Presbyterian Hospital,* 121 A.D.2d 346, 503 N.Y.S.2d 788 (1st Dep't 1986), the court held that there was not continuous treatment where no appointment for a return visit was scheduled, and no further treatment was anticipated. There is, however, continuous treatment "when a patient, instructed that he or she does not need further attention, *soon* returns to the doctor because of continued pain in that area for which medical attention was first sought." *McDermott v. Torre,* 56 N.Y.2d 399, 406, 452 N.Y.S.2d 351, 354, 437 N.E.2d 1108, 1111 (1982) (emphasis added).

The continuous treatment doctrine "provides the patient with the opportunity to seek corrective treatment from the doctor, [and] gives the physician a reasonable chance to identify and correct errors made at an earlier stage of treatment." *Barrella v. Richmond Memorial Hospital,* 88 A.D.2d 379, 383, 453 N.Y.S.2d 444, 447–48 (2d Dep't 1982). It rests on the premise that "the trust and confidence that marks the physician-patient relationship puts the patient at a disadvantage to question the doctor's techniques ... and gives the patient the right to rely upon the doctor's professional skill without the necessity of interrupting a continuing course of treatment by instituting suit." *Id.* at 383, 453 N.Y.S.2d at 447 (citations omitted). Where there is no continuing treatment, the doctrine "loses its efficacy; there is simply no reason for a patient to defer the commencement of legal action." *Grellet v. New York,* 118 A.D.2d 141, 504 N.Y.S.2d 671, 675 (2d Dep't 1986).[1]

---

**1.** The Bobrows also cite *Barrella v. Richmond Memorial Hospital,* 88 A.D.2d 379, 453 N.Y.S.2d 444 (2d Dep't 1982), for the proposition that the doctrine "salvages causes of action which otherwise would be time-barred because of the latent nature of the injury ... [and] provides flexibility when there is difficulty in determining the precise moment when the injury causing act or omission took place." *Id.* at 383, 453 N.Y.S.2d at 448 (citations omitted). This contention is directly in conflict with the purpose of New York's statute of limitations. *See Duffy v. Horton Memorial Hospital,* 66 N.Y.2d 473, 476–77, 497 N.Y.S.2d 890, 892–93, 488 N.E.2d 820, 822–23 (1985). Furthermore, this is not a case in which the injury was discovered after the statute of limitations had run, or a case in which

The continuous course of treatment exception is not applicable to the Bobrows. Although Mrs. Bobrow was suffering from fibrocystic disease throughout the time she was a patient of Dr. DePalo, he never *treated* her for that or any other condition. She did not make frequent visits to his office, undergo hospitalization, or receive post-operative treatment during the time period in question. She did not receive instructions or medication. Mrs. Bobrow saw Dr. DePalo less than once a year over a nine-year period, "for the sole purpose of ascertaining the state of [her] condition." N.Y.Civ.Prac.L. § 214-a. Even if there was treatment prior to 1981, in July 1981, Dr. DePalo considered further examinations unnecessary, and advised Mrs. Bobrow merely to return "when necessary." Mrs. Bobrow's return visit to Dr. DePalo in February 1983, over eighteen months later, did not constitute a timely return visit and did not toll the statute. *See Grellet v. New York*, 118 A.D.2d 141, 504 N.Y.S.2d 671, 676 (2d Dep't 1986) (intervals between visits were twenty months, nineteen months, and seventeen months long).

The Bobrows concede that "[i]f this were a case where the plaintiff appeared only for routine breast examinations and given the same time frames as are presented here, then clearly the continuous treatment exception to the statute of limitations would not be applicable." (Dunleavy Aff. ¶ 12.). They contend that Mrs. Bobrow's examinations were not routine because Mrs. Bobrow went to Dr. DePalo to have a very particular condition monitored and to receive treatment as necessary. Treatment was never provided, however, and the distinction is not relevant. Independent checkups for the detection of breast cancer do not constitute a continuous course of treatment, and cannot be linked together to toll the statute of limitations.

In *Davis v. New York*, 38 N.Y.2d 257, 379 N.Y.S.2d 721, 342 N.E.2d 516 (1975) (per curiam), the New York Court of Appeals specifically held that a patient's diagnostic examinations in connection with a lump in her breast were independent examinations and did not toll the statute. Mrs. Davis was examined at a cancer detection center in February 1968, and in February 1969, and both times was advised that the lump in her breast was not cancer. In December 1969, she was advised by her family physician to have the lump examined again. She called the center and had an appointment scheduled for February 1970. In January, however, Mrs. Davis entered the hospital and had a radical mastectomy. The lump was cancer and she eventually died as a result. Her husband brought the action to recover for malpractice in connection with the earlier alleged misdiagnoses. The court affirmed summary judgment in favor of defendant, holding that although Mrs. Davis sought a specialist to diagnose and monitor a lump in her breast, the visits constituted "intermittent rather than continuous medical services," and were "discrete and complete." 38 N.Y.2d at 260, 379 N.Y.S.2d at 724, 342 N.Y.2d at 517.

Mrs. Bobrow's visits to Dr. DePalo were "discrete and complete," and constituted "intermittent rather than continuous medical services." No rationale behind the continuous treatment doctrine applies to the Bobrows' action. Dr. DePalo and Mrs. Bobrow had an ongoing relationship, but there was no treatment that would have been interrupted by commencement of a lawsuit. Furthermore, plaintiffs discovered the alleged malpractice more than eleven months before the limitations period ran, yet waited until April 5, 1985 to bring this action.

CONCLUSION

As a matter of law, the statute of limitations was not tolled by the continuous treatment doctrine. The Bobrows' action is time-barred. Defendant's motion for summary judgment is granted.

SO ORDERED.

---

the precise moment of the alleged malpractice is at issue.