OPINION OF THE COURT
Stanley L. Sklar, J.
The main issue on this motion for partial summary judgment in an orthopedic malpractice action is the applicability of the continuous treatment exception to the Statute of Limitations. Does fact that the patient’s son-in-law, with whom the *171 patient was living, happens to be an orthopedic surgeon, who furnished some medical care to the patient, render the continuous treatment doctrine inapplicable?
FACTS
Plaintiff, Carolyn Balensweig, is the daughter and administratrix of the estate of Irene Smith.
On July 28, 1974, Mrs. Smith was admitted to the hospital for special surgery for reduction and fixation of a fracture of her right femur. The attending physician was defendant, Ralph Marcove. The admission record lists Dr. Howard Balensweig, who is Mrs. Smith’s son-in-law, and is also an orthopedic surgeon, as her nearest relative. In addition to the fracture, Mrs. Smith was diagnosed as having dementia of unknown etiology. Defendant’s counsel states that, because of her mental condition, Dr. Balensweig had to sign the consent form to have surgery performed by Dr. Marcove. During that surgery Dr. Marcove inserted three Knowles pins into Mrs. Smith’s right hip. Various X-ray reports issued in August and September 1974 indicate that, despite the surgery, the fracture did not appear securely united. Mrs. Smith was discharged from the hospital "with home care” on October 10, 1974. She was "[t]o be followed as an outpatient”. The discharge note indicates that her condition was "[u]nimproved”.
On January 21, 1975, Mrs. Smith was readmitted to the same hospital as the patient of Dr. Marcove. The admitting diagnosis was "[s]tatus post operative fractured hip”. The admission record refers to the right hip fracture and its nonunion, as well as to Mrs. Smith’s senile dementia. On January 23, 1975, Dr. Marcove operated on the right femur by removing the Knowles pins and the head of the right femur, and by inserting an Austin-Moore endoprothesis. Mrs. Smith was discharged on February 23,1975.
On March 2, 1975, Mrs. Smith was again admitted to the hospital as Dr. Marcove’s patient, this time with a fractured right femur. According to the hospital records Mrs. Smith, a patient who had the Austin-Moore prosthesis inserted "for failed Knowles pinning”, fell while using her walker and was taken to the hospital where the X ray revealed a fracture of her right femur. There was also a continuing diagnosis of senile dementia. Mrs. Smith was discharged on April 12, 1975.
The summons and complaint were served on Dr. Marcove on December 10, 1977. Dr. Marcove’s answer contained a Statute *172 of Limitations defense. Mrs. Balensweig now moves for summary judgment dismissing that defense, urging that the treatment rendered by Dr. Marcove to Mrs. Smith’s right hip was continuous (CPLR 214-a). In addition, Mrs. Balensweig moves to amend paragraph 5 of the complaint which alleges that Dr. Marcove treated Mrs. Smith from about July 1974 through February 1975, so as to extend treatment through about April 14, 1975.
Dr. Marcove does not oppose this latter application and, in fact, concedes that he treated Mrs. Smith through April 1975. Accordingly, that branch of plaintiff’s motion is granted.
Dr. Marcove does, however, oppose Mrs. Balensweig’s application to strike the Statute of Limitations defense and cross-moves to dismiss all alleged acts of malpractice accruing more than three years before service of process, namely, all acts during Mrs. Smith’s first hospital admission.
Dr. Marcove does not deny that the treatment rendered to Mrs. Smith during her three hospital stays was for the same condition. Rather, he claims that Mrs. Smith, when discharged after her first hospitalization, terminated her relationship with him by "refusing” to seek follow-up care from him and by, instead, seeking such care from another physician — her son-in-law, Dr. Balensweig with whom she was living following her discharge.
In addition, Dr. Marcove claims that, since Dr. Balensweig was also an orthopedic surgeon, who was able to evaluate the care rendered to Mrs. Smith and who selected Dr. Marcove to treat his mentally incompetent mother-in-law, the rationale underlying the continuous treatment doctrine, i.e., the continuing trust and confidence that a patient places in a physician (Barrella v Richmond Mem. Hosp., 88 AD2d 379, 383 [2d Dept 1982]), is inapplicable.
These arguments are without merit. With respect to Mrs. Smith’s alleged "refusal” to return for follow-up visits the record fails to indicate that Mrs. Smith considered her treatment terminated. Rather, it indicates that following her discharge she was disoriented and irrational and refused to leave Dr. Balensweig’s home.
The fact that Dr. Balensweig rendered medical care to Mrs. Smith while she was living in his home does not lead to the conclusion that either he or Mrs. Smith considered their relationship with Dr. Marcove terminated. It is natural for any family member to render assistance to an ailing relative *173 to the extent that they are capable. The fact that Dr. Balensweig’s capabilities are greater than an average family member does not turn his relationship with his mother-in-law from a familial one into a professional one. Even if Dr. Balensweig was acting to some extent as her physician for limited purposes, Dr. Marcove was still her primary physician. The record indicates, for example, that Dr. Balensweig on one occasion, when he was able to get his mother-in-law into his office for an X ray, "showed the x-ray to Dr. Marcove for his decision”, thereby demonstrating that Dr. Balensweig still considered Dr. Marcove to be Mrs. Smith’s physician. In addition, defense counsel concedes, and the hospital record establishes, that Mrs. Smith was suffering from senile dementia, thus any refusal on Mrs. Smith’s part to leave Dr. Balensweig’s home is of questionable significance on the issue of whether she terminated her relationship with Dr. Marcove.
Dr. Marcove’s claim that the rationale underlying the continuous treatment doctrine is inapplicable here, since Dr. Balensweig was also an orthopedic surgeon, is similarly without merit. The record indicates that the reason Dr. Balensweig left the treatment of his mother-in-law up to Dr. Marcove, another orthopedic surgeon, was because Dr. Balensweig believed "very strongly” that he should not operate on a close relative. The fact that Dr. Balensweig rendered assistance to Mrs. Smith when he visited her in her hospital room and made entries on her chart regarding minor, tangential orders when he was present does not equate with a lack of reliance on Dr. Marcove as Mrs. Smith’s physician. Anyone who has ever been hospitalized or who has had a close relative hospitalized knows, especially in this age of a recognized nursing shortage, that visitors commonly assist the patient. As noted above, the fact that the care rendered by Dr. Balensweig when he visited his mother-in-law was sometimes medical in nature does not turn his relationship with his mother-in-law into such a professional one, as to mean that Dr. Marcove was no longer her physician.
Dr. Marcove admitted that he rendered professional courtesies to Dr. Balensweig and discussed Mrs. Smith’s course of treatment and her progress with Dr. Balensweig. This again is not inconsistent with a doctor/patient relationship. A doctor is required to get a patient’s informed consent in terms understandable to the patient. In this case the patient, Mrs. Smith, was concededly incompetent to give her consent; thus, Dr. Balensweig’s consent was required. The depth of Dr. Mar- *174 cove’s discussions with Dr. Balensweig was commensurate with Dr. Balensweig’s knowledge of the procedures to be performed and the care to be rendered. Dr. Marcove’s EBT reveals that, although he discussed the possible courses of treatment available with Dr. Balensweig, he (Dr. Marcove) selected the treatment to be rendered and Dr. Balensweig agreed. Many patients agree with the course of treatment to be rendered. Such agreement does not mean that they are relying on their own judgment rather than on their doctor’s.
To suggest, as does defense counsel, that because Dr. Balensweig was a physician he did not rely on Dr. Marcove’s medical judgment is without merit. The argument would lead to the conclusion that any physician who goes to another physician for his own medical care or who brings his sick child to a pediatrician and then takes care of his sick child at home, does not repose trust and confidence in that physician, and cannot invoke the continuous treatment doctrine.
Accordingly, Mrs. Balensweig’s motion for an order dismissing Dr. Marcove’s Statute of Limitations defense is granted and Dr. Marcove’s cross motion is denied. Mrs. Balensweig’s application amending the complaint is granted without opposition.