■ SALLIE MASSIE, Respondent, v DAVID B. CRAWFORD, JR., Appellant, et al., Defendant.—Order, Supreme Court, New York County (Stanley Sklar, J.), entered on or about March 20, 1989, which denied defendant Crawford's motion for partial summary judgment, affirmed, without costs.

In 1969, when defendant, a gynecologist, inserted a Lippes Loop intrauterine device (IUD) in plaintiff, he informed her that although the IUD could remain in place indefinitely, periodic routine follow-up examinations would be necessary. Plaintiff followed these instructions and returned to defendant's office on several occasions, most recently in March of 1981 and January of 1984. Earlier examinations revealed no gynecological problems and a vulvo-vaginitis condition was successfully treated during the 1981 visit.

Plaintiff thereafter telephoned defendant on January 30, 1984 complaining of abdominal pain and fever. When he examined her the following day, he discovered that plaintiff was suffering from pelvic inflamatory disease (PID), a condition resulting from the presence of the IUD. A hysterectomy was performed and plaintiff commenced this medical malpractice action alleging, *inter alia,* that defendant was negligent in providing follow-up care for the IUD, in performing periodic examinations, in permitting the IUD to remain in place for an extensive period of time, in failing to timely remove the IUD and in failing to timely diagnose and treat the PID.

---

Defendant moved for partial summary judgment with respect to plaintiff's claims relating to treatment rendered prior to 1984 on the ground that they were barred by the Statute of Limitations. Plaintiff, however, maintained that defendant's treatment of her was continuous from the time the IUD was inserted in 1969 until the date of her last visit in 1984 and that the Statute of Limitations was tolled pursuant to the continuous treatment doctrine.

We note at the outset that plaintiff's negligence claims arising prior to the treatment rendered in January of 1984 are time barred regardless of whether the 2½-year Statute of Limitations contained in CPLR 214-a or three-year Statute of Limitations period in effect prior to 1975 (CPLR 214) is applied. Partial summary judgment was properly denied, however, since triable issues of fact exist with regard to whether defendant "treated" plaintiff prior to 1984 and whether such treatments were continuous.

The continuous treatment doctrine may not be invoked to extend the time in which to sue where examinations by a physician are undertaken at the request of the patient for the sole purpose of ascertaining the state of his or her condition (CPLR 214-a). Although defendant contends that plaintiff cannot rely on the continuous treatment doctrine because her visits to him were for routine examinations (*Charalambakis v City of New York*, 46 NY2d 785; *Landau v Salzman*, 129 AD2d 774), it cannot be said as a matter of law that each visit to defendant's office was discrete, complete and "for the sole purpose of ascertaining the state of [her] condition" (CPLR 214-a; *cf., Werner v Kwee*, 148 AD2d 701). Plaintiff claimed that after inserting the IUD, defendant directed her to return on a regular basis so that he could "supervise the care of the IUD." The complaint alleged that defendant was negligent in that he failed to discover the PID that was developing from the time the IUD was inserted and that the condition developed because of the extended time in which he allowed the IUD to remain inside her.

Contrary to defendant's contention, plaintiff also satisfied her burden of establishing the continuous nature of such treatments (*Barrella v Richmond Mem. Hosp.*, 88 AD2d 379). It is undisputed that defendant was the only gynecologist to render care to plaintiff over the 15-year period and that it was he who instructed plaintiff to return for periodic examinations after inserting the IUD in 1969.

"The 'continuing trust and confidence' which underlies the

'continuous treatment doctrine' *(Coyne v Bersani,* 61 NY2d 939, 940) does not necessarily come to an end upon a patient's last personal visit with his or her physician *(see, McDermott v Torre,* 56 NY2d 399, 406), when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past. *(Compare, Davis v City of New York,* 38 NY2d 257.) * * * Regardless of the absence of physical or personal contact between them in the interim, where the physician and patient reasonably intend the patient's uninterrupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress, the requirement for continuous care and treatment for the purpose of the Statute of Limitations is certainly satisfied" *(Richardson v Orentreich,* 64 NY2d 896, 898-899).

The fact that there was a 2-year-and-10-month gap between visits in 1981 and 1984 is not dispositive since it cannot be found as a matter of law that an ongoing physician-patient relationship was not contemplated nor that the trust and confidence involved in such relationship no longer existed *(Richardson v Orentreich, supra; cf., Rizk v Cohen,* 73 NY2d 98; *DeJurenev v Robins Co.,* 114 AD2d 333). The toll may be properly invoked in this case because a timely return visit was instigated by the patient at the physician's direction *(McDermott v Torre, supra)* establishing her continuing trust in the relationship *(Rizk v Cohen, supra).* Nor does the fact that the gap between visits is longer than the applicable Statute of Limitations preclude a finding of continuous treatment *(Rizk v Cohen, supra; Curcio v Ippolito,* 63 NY2d 967).

Since issues of fact exist regarding the application of the continuous treatment doctrine, defendant's motion for partial summary judgment was properly denied. Concur—Ross, J. P., Rosenberger and Ellerin, JJ.

Carro and Smith, JJ., dissent in a memorandum by Smith, J., as follows: I would reverse the order of the IAS court and grant partial summary judgment to the defendant Crawford.

On this appeal from the denial of defendant Crawford's motion for summary judgment, the issue presented is whether plaintiff's submissions in opposition to the motion establish a nexus between the January 1984 treatment in which the disease was diagnosed and prior treatments by defendant doctor sufficient to raise a question of fact as to defendant

doctor's continuous treatment of plaintiff for the "same" illness or condition.

In 1969 defendant David B. Crawford (Dr. Crawford), a gynecologist, inserted a Lippes Loop intrauterine device (IUD) in plaintiff. Plaintiff alleges that Dr. Crawford advised her that the device could remain in place indefinitely and instructed that she return for periodic follow-up examinations.

Plaintiff was examined by Dr. Crawford 16 times between 1969 and 1981. In each case the IUD was checked. Her most recent examinations during this period occurred on February 28, 1978, April 2, 1980 and March 12, 1981. The 1981 examination resulted in a diagnosis of vulvo-vaginitis, and a cervical culture prepared by Dr. Crawford was reported as negative. Plaintiff did not see any gynecologist throughout 1982 and 1983. On January 30, 1984 plaintiff telephoned Dr. Crawford complaining of abdominal pain and fever. After examining her on January 31, 1984, Crawford rendered a diagnosis of pelvic inflammatory disease (PID). Plaintiff subsequently underwent a hysterectomy.

On December 18, 1984 plaintiff commenced this action, alleging medical malpractice by Dr. Crawford and asserting products liability claims against defendant Ortho Pharmaceutical Corporation (Ortho), the manufacturer of the Lippes Loop IUD.

The cause of action relating to Dr. Crawford alleges, *inter alia,* negligence in inserting the IUD, in failing to remove the device, in failing to monitor plaintiff and in failing to timely diagnose and treat plaintiff's resultant condition.

Following an examination before trial (EBT) of plaintiff, Dr. Crawford moved in October 1988 for partial summary judgment. (CPLR 3212.) Dr. Crawford argued that there was a break in the physician-patient relationship between March 1981 and January 1984, that each of plaintiff's visits was for a routine checkup which was separate and discrete and that the pelvic inflammatory disease diagnosed in 1984 was an entirely new development which had not been present at the time of his prior examinations of plaintiff. Defendant's moving papers included office records and portions of the EBT transcript in which plaintiff conceded that she experienced none of the symptoms, nor exhibited any of the signs, of PID prior to sometime around January 1984.

Plaintiff's submissions in opposition to the motion included an affidavit by plaintiff's counsel and plaintiff's affidavit in which she alleged that the disease was caused by the improper

design of the IUD and by the extraordinary length of time during which the IUD was in place. She further alleged that Dr. Crawford was her only treating gynecologist during the relevant period and that each of her routine follow-up visits included a checkup for the IUD.

The IAS court, in denying the motion, held that there exist triable issues of fact as to whether treatment was continuous from 1969 to 1984, that the three-year Statute of Limitations was applicable as some of the claimed malpractice occurred prior to 1975 (CPLR 214 [6]) and that a 34-month "gap" in plaintiff's visits to defendant did not as a matter of law preclude a finding that treatment was continuous.

Since implantation of the IUD, the initial act of claimed malpractice, occurred prior to July 1, 1975, the motion court's application of the three-year Statute of Limitations was proper. *(Goldsmith v Howmedica, Inc.,* 67 NY2d 120, 122, n 2 [1986], citing *McDermott v Torre,* 56 NY2d 399, 407.) Similarly, the court correctly concluded that the continuous treatment doctrine could be implicated even where there is an almost three-year "gap" in treatment. *(Curcio v Ippolito,* 63 NY2d 967, 969 [1984], *affg* 97 AD2d 497 [2d Dept 1983].) However, the motion court erred in inferring, in the face of evidence to the contrary, that plaintiff's January 1984 visit to Dr. Crawford may have been for treatment of the same illness or condition as her earlier visits.

In a medical malpractice action the continuous treatment doctrine, codified by CPLR 214-a (L 1975, ch 109), tolls the applicable Statute of Limitations when the course of treatment, which includes the allegedly negligent acts or omissions, has run continuously and is related to the same original condition or complaint, or to the same or related illness or injury. *(McDermott v Torre, supra; Borgia v City of New York,* 12 NY2d 151, 155 [1962]; CPLR 214-a; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 214-a.03.)

Since no evidence was offered connecting the 1984 visit with earlier visits to defendant, it is not necessary to decide whether plaintiff's visits to Dr. Crawford between 1969 and 1981, which included the monitoring of the IUD, constitute continuous treatment. It is noted, however, that routine periodic checkups, each of a discrete and complete nature, for the sole purpose of ascertaining a patient's condition or monitoring an earlier procedure, will not constitute continuous treatment, notwithstanding the establishment of an ongoing physician-patient relationship. *(See, Davis v City of New York,* 38 NY2d 257 [1975] [two yearly examinations to diagnose breast

cancer were intermittent rather than continuous medical service]; *Werner v Kwee,* 148 AD2d 701, 702-703 [2d Dept 1989] [four visits in a 24-month period to monitor reoccurrence of cancer following surgery were each complete and for the sole purpose of ascertaining the state of plaintiff's condition]; *Bobrow v DePalo,* 655 F Supp 685 [SD NY 1987] [intermittent visits to defendant during a nine-year period to ascertain condition of fibrocystic disease not continuous treatment]; *Charalambakis v City of New York,* 46 NY2d 785 [1978] [diagnosis of blindness after a series of routine pediatric examinations during a nine-month period following birth did not toll the statute where the infant's blindness allegedly was due to malpractice at birth].)

An examination or treatment unrelated to prior visits constitutes at best a "resumption" of treatment rather than continuous treatment. *(Barrella v Richmond Mem. Hosp.,* 88 AD2d 379 [2d Dept 1982] [resumption of treatment after failing for eight months to make recommended visits following surgery]; *Curcio v Ippolito, supra* [no continuity of treatment related to surgery where there was a more than three-year gap in treatment].) Here plaintiff offered no evidence linking the disease, which was diagnosed and treated as a result of the January 31, 1984 visit to Dr. Crawford, with treatment by him in March 1981 or earlier.

*Richardson v Orentreich* (64 NY2d 896 [1985], *affg* 97 AD2d 9 [1st Dept 1983]), does not support the plaintiff's position. There, plaintiff was being treated for silicone injections by her doctor. The Court of Appeals ruled that plaintiff's failure to keep a regularly scheduled appointment in connection with silicone injections raised a question of fact as to continuous treatment.

Once the defendant proves the affirmative defense of Statute of Limitations, the burden shifts to plaintiff to establish the applicability of the continuous treatment exception. *(Werner v Kwee,* 148 AD2d, *supra,* at 702; *Ciciless v Lane,* 129 AD2d 759 [2d Dept 1987]; *Bobrow v DePalo,* 655 F Supp 685, *supra.)* In opposition to summary judgment, plaintiff was required to assemble and lay bare affirmative proof establishing the existence of genuine material issues of fact in this regard. *(Zuckerman v City of New York,* 49 NY2d 557, 562.) This she failed to do. She offered no evidence that the IUD was the cause of the disease diagnosed by Dr. Crawford in 1984. In addition, she did not tender any expert opinion that symptoms of the disease could have been detected by defendant in his examination of her in 1981, or earlier, in order to

support her contention that the visit on January 31, 1984 was for the same illness, injury or condition for which she was being treated by Dr. Crawford.