Hancock, Jr., J.
(dissenting). The order should be affirmed. As the majority at the Appellate Division properly held (160 AD2d 447, 448-449), the record presents "issues of fact * * * regarding the application of the continuous treatment doctrine” (id., at 449) warranting denial of summary judgment.
It is not disputed that the insertion of the IUD was a *521 medical treatment or that the continued presence of the device in plaintiffs body constituted a medical condition (see, CPLR 214-a). Nor can it be questioned that plaintiff had an ongoing relationship of trust and confidence with Dr. Crawford who continued as her only gynecologist and saw her frequently over a 15-year period. The decisive question pertains to the purpose and nature of plaintiffs visits to Dr. Crawford after the procedure in 1969 when the IUD was implanted. If, as the majority opinion suggests, the purpose of plaintiffs subsequent visits was solely for "routine gynecological examinations, not therapy to correct a medical condition” (majority opn, at 520), the continuous treatment doctrine would not be applicable. For then it could not be said that the subsequent visits were referable to the initial medical treatment in implanting the IUD and plaintiffs subsequent medical condition in having it remain in her body (see, e.g., McDermott v Torre, 56 NY2d 399, 405; Charalambakis v City of New York, 46 NY2d 785, 787). But it is not that simple.
Plaintiff states that her subsequent visits were referable to the continued implantation of the IUD. These visits, she maintains, were made at the instance of Dr. Crawford who instructed her to return for follow-up visits in accordance with her "understanding that during this entire course of treatment by defendant that he was supervising the care of the IUD, and that these routine examinations included check-ups for the IUD”. That these visits may have included general examinations or other medical services in addition to IUD care certainly does not, as a matter of law, make them "discrete, complete and routine” examinations unrelated to defendant’s follow-up care of plaintiffs IUD condition. Her relationship with Dr. Crawford with respect to the IUD, she says, continued through her last visit to him in 1984. Indeed, plaintiffs medical records confirm that plaintiff reported to defendant 22 times over the 15 years after defendant inserted the IUD. If plaintiffs factual assertions concerning Dr. Crawford’s continued supervision and care concerning the implanted IUD are accepted as true, the continuous treatment doctrine would apply. Her allegations describe a situation that is no different from when a patient consults a surgeon for a surgical procedure and then returns for follow-up care.
Thus, there are factual questions pertaining, at least, to Dr. Crawford’s instructions concerning follow-up care for the IUD, the understanding as to Dr. Crawford’s continued responsibility for supervision for the IUD, the motivating factor for the *522 visits, and the nature of the medical services rendered on those visits. These questions should not be decided on motion but in a trial (see, Richardson v Orentreich, 64 NY2d 896, 898-899; Gudmundson v Axelrod, 57 NY2d 930, 932). As our Court has often pointed out, " 'issue-finding, rather than issue-determination, is the key to the [summary judgment] procedure’ ” (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404, quoting Esteve v Abad, 271 App Div 725, 727).
Our recent decision in Nykorchuck v Henriques (78 NY2d 255), cited by the majority, is plainly distinguishable and demonstrates precisely why summary judgment is not called for here. In Nykorchuck, the original services constituting the alleged malpractice pertained to an examination of a lump in the patient’s breast. The Court dismissed the subsequent services claimed to constitute the continuous treatment "related to a separate medical condition, endometriosis” (id., at 259 [emphasis added]). Here, of course, the subsequent services, according to plaintiff, related to the same medical condition — the implanted IUD. Nor does it matter, as the Appellate Division pointed out, that there was a two-year and 10-month gap between the 1981 and 1984 visits. It "cannot be found as a matter of law that an ongoing physician-patient relationship was not contemplated nor that the trust and confidence involved in such relationship no longer existed” (160 AD2d 447, 449, supra; see, Richardson v Orentreich, 64 NY2d 896, 898-899, supra).
The issue is not whether Dr. Crawford is ultimately responsible but simply whether plaintiff should have a chance to prove that he is. In my opinion, depriving plaintiff of this right in the face of the factual questions presented in this record is not consistent with basic summary judgment law or with our decisions pertaining to continuous treatment. I, therefore, dissent.
Judges Alexander, Titone and Bellacosa concur with Judge Simons; Judge Hancock, Jr., dissents and votes to affirm in a separate opinion in which Chief Judge Wachtler and Judge Kaye concur.
Order reversed, etc.