**Frank P. DeGIROLAMO, Plaintiff,**

v.

**UNITED STATES of America and Veterans Administration as an agent of the United States of America, Defendants.**

No. CV–80–0379.

United States District Court,
E. D. New York.

Feb. 9, 1981.

James G. Burke, Jr., Station Island, N. Y., for plaintiff.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. by Jo Davis, Asst. U. S. Atty, Brooklyn, N. Y., for defendants.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

This summary judgment motion seeks to dismiss the complaint of the plaintiff, Frank P. DeGirolamo ("DeGirolamo"), pursuant to Rule 56 of the Fed.R.Civ.P. The Government alleges that DeGirolamo's malpractice cause of action, based on the Federal Torts Claim Act, 28 U.S.C. § 2671 et seq. ("FTCA"), is time barred by the two-year statute of limitations in 28 U.S.C. § 2401(b). The Government contends that the claim is untimely because the cause of action accrued on October 15, 1975 and DeGirolamo failed to file his administrative claim until May 18, 1979, more than two years after the accrual date. For reasons stated below, the motion is granted in part and dismissed in part.

DeGirolamo sustained injuries to his left knee while on military maneuvers with the United States Army in 1969. From 1969 until his referral to the Veterans Administration Hospital at Poly Place ("VAPP") in 1975, he received treatment for the injuries at the Veterans Administration Out-Patient Clinic at Ryerson Street ("VAOC"). He was admitted to the VAPP in October, 1975 initially to determine whether corrective surgery was necessary. X-rays were taken of the left knee and without the assistance of an arthrogram,[1] the injury was diagnosed as a torn left medial meniscus. On October 8, 1975, Drs. Kharod and Smith of the VAPP performed a meniscectomy[2] to remove the torn cartilege.

For months after the operation, DeGirolamo received rehabilitation treatment at the VAPP and the VAOC, but the pain and swelling in the left knee increased. Because the post-operative problems rendered him virtually immobile, DeGirolamo sought additional disability benefits and was advised by the VA officials that to increase his 10% disability pension, he should obtain a medical report from a private physician describing the nature and the extent of his injuries. He thereafter consulted Dr. Hubert Pearlman, a private orthopedist, in July, 1976, and Dr. Pearlman referred DeGirolamo to the Lutheran Medical Center, where an arthrogram of his left knee was done. After receiving the arthrogram DeGirolamo returned to Dr. Pearlman who informed him that a piece of cartilege had been left in the knee after the menisecto-

---

1. An arthrogram is an X-ray procedure which enabled the torn meniscal tissue to be visualized. More specifically, an arthrographic examination consists of the injection of a radioactive dye into the knee joint, followed by a fluoroscopic and/or X-ray examination.

2. The meniscus is a crescent shaped piece of cartilege in the knee joint, and a meniscectomy is the surgical removal of the cartilege.

my. Dr. Pearlman never treated DeGirolamo for the injury, but advised him to return to the VAPP for further treatment.

On September 16, 1976, DeGirolamo showed the results of the arthogram to Dr. Smith of the VAPP who stated that the failure to remove the entire meniscus was a common occurrence and that cartilege remnants are often left in the knee after a menisectomy. Dr. Smith also advised against a subsequent operation because he felt that the existence of scar tissue around the operative site would complicate the procedure. DeGirolamo apparently accepted Dr. Smith's explanation, but continued to seek an increase in his disability payments. To this end, he hired an attorney, Mr. Julian Shestack, to assist him, and in further support of the increased pension application, he consulted two additional private orthopedists, Drs. Fielding and Marshal, in November 1976, who also told DeGirolamo of the existence of the cartilege remnants in the left knee. DeGirolamo was likewise told by Dr. Marshal that leaving a piece of cartilege in the knee was a common result of a menisectomy.

DeGirolamo continued to receive treatment from VA doctors at the VAPP through December 15, 1977 and at the VAOC through May 25, 1978. He was, however, never treated by Drs. Kharod and Smith, the operating physicians, after 1975 and 1976 respectively. On May 18, 1979, DeGirolamo filed this malpractice suit seeking redress for the injuries resulting both from the October 15, 1975 operation and the post-operative care received at the VA facilities.

The applicable statute of limitations for suits brought under the FTCA is located in 28 U.S.C. § 2401(b) which provides in pertinent part that:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . .

The sole issue in this action is when the cause of action accrued.

DeGirolamo argues that the Government defendants should be barred from asserting the statute of limitations mainly because he "was advised on numerous occasions by the operating surgeon [Dr. Smith] and the treating orthopedic surgeon at the out-patient facility that no malpractice [had] occurred and also that he [had not been] injured as a result of the operation performed and the care pre-operatively, operatively and post-operatively afforded him." (Pltf. Memo. of Law at 15.) Moreover, DeGirolamo avers that he had no knowledge of the act or omission causing his injury, had no knowledge of any legal remedy to which he was entitled, and his justified reliance on the advice received by the VA doctors tolled the statute of limitations until his treatment at the VA facilities abated.

In *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Supreme Court established that a claimant cannot be charged with knowledge of an injury which had yet to manifest itself. Thus, on the basis of the *Urie* court's "blameless ignorance" standard, *id.* at 170, 69 S.Ct. at 1024, numerous courts have held that a tort claim accrues in a malpractice action when the injured party has discovered, or in the exercise of reasonable diligence, should have discovered the acts constituting the malpractice. *Quinton v. United States,* 304 F.2d 234, 240 (5th Cir. 1962); *see West v. United States,* 592 F.2d 487 (8th Cir. 1979); *Hulver v. United States,* 562 F.2d 1132 (8th Cir. 1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978); *Sanders v. United States,* 551 F.2d 458 (D.C.Cir.1977).

The accrual date is often postponed, however, in cases where a patient is receiving continuous treatment from a given physician and relying on his advice. *Kossick v. United States,* 330 F.2d 933 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); *see Reilly v. United States,* 513 F.2d 147 (8th Cir. 1975); *Ciccarone v. United States,* 486 F.2d 253 (3d Cir. 1973). This rule tolling the statute of limitations evolved for several reasons: first, it would obviously be both absurd and inappropriate to force a claimant to institute suit against

either a hospital or a physician while still undergoing corrective medical treatment, *Kossick v. United States, supra*; and second, it prevents the concealment by physicians of malpractice acts until the time in which to sue has expired. *Ashley v. United States*, 413 F.2d 490, 493 (9th Cir. 1969). Without these tolls, a claimant would often be at a significant disadvantage because the statute of limitation could be running before he was either "armed with the facts about the harm done to him," *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979) or aware of the acts or omission which caused his injury. *De Witt v. United States*, 593 F.2d 276 (7th Cir. 1978).

■ Despite the toll granted for continuous treatment, the toll is not without exception and is lifted when the facts became "so grave as to alert a reasonable person that there may have been negligence related to the treatment received . . . ." *Reilly v. United States, supra*, 513 F.2d at 150; *see Ciccarone v. United States, supra; Ashley v. United States, supra; Brown v. United States*, 353 F.2d 578 (9th Cir. 1965). As succinctly noted by the Third Circuit in *Tyminski v. United States*, 481 F.2d 257 (3d Cir. 1973), the toll for continuous treatment "has no merit when a person knows of the acts constituting negligence." *Id.* at 265 n.5. Moreover, the toll is lifted in many cases when a patient receives improper medical care from one government physician, and he is thereafter treated by succeeding government doctors who are not accused of malfeasance. When the facts known to the claimant warrant inquiry, courts have refused to allow a claimant to postpone his investigation, and consequently, toll the statute of limitations in a suit against first government doctors until treatment with succeeding government physicians has ended. *See, e. g., Hulver v. United States, supra; Brown v. United States, supra.*

■ It is obvious to this court that shortly after the operation DeGirolamo was something less than ignorant of his circumstances. In fact, he was aware of all the pertinent data by November, 1976. In his attempt to increase his disability pension, he consulted three private physicians, and each told DeGirolamo that a piece of cartilege had been left in the knee after the menisectomy. As further evidence of DeGirolamo's knowledge of the alleged malpractice, he subsequently submitted a claim for reimbursement on November 25, 1976 for the medical services received from these private physicians. In that claim statement, DeGirolamo declared that:

I hereby make a claim for medical [expenses] because the medical [diagnoses] were incorrect at the Brooklyn VA Hospital.

I entered the VA Hospital on October 3, 1975 to have a left [medial menisectomy] operation for removal of the entire cartilege. At the Brooklyn VA Hospital the doctors were treating me for a [severe] . . . [arthritic] condition. After 10 months of going back and forth to the hospital and in pain *I decided to seek additional medical findings which revealed that pieces of cartilege were left in.* (emphasis added)

Since DeGirolamo knew of the acts constituting the malpractice in late 1976, he cannot resort to the "blameless ignorance" standard as a means of avoiding the statute of limitations. *West v. United States, supra; Hulver v. United States, supra; Sanders v. United States, supra; Quinton v. United States, supra.* Moreover, this knowledge also limits the use of the continuous treatment toll, *Tyminski v. United States, supra*, and DeGirolamo is barred from using the continuous treatment received by succeeding Government doctors to postpone the accrual date for the alleged malpractice acts of Drs. Kharod and Smith. *Hulver v. United States, supra; Brown v. United States, supra.* Thus, regardless of the treatment received at the VAPP through December, 1977, and at the VAOC through May, 1978, DeGirolamo's knowledge in November, 1976 of both the injury and its cause precludes the rise of either the "blameless ignorance" toll or the continuous treatment toll.

■ If DeGirolamo was ignorant of his legal rights even in light of the knowledge that the menisectomy was the cause of his disorder, this ignorance likewise does not toll the statute of limitations. Recently, the Supreme Court in *United States v. Kubrick, supra,* was faced with the issue whether a claim under the FTCA " 'accrues' within the meaning of the [FTCA] when the plaintiff knows both the existence and the cause of his injury or at a later time when he also knows that the acts inflicting the injury may constitute medical malpractice." 444 U.S. at 113, 100 S.Ct. at 355. In rejecting this latter standard and accepting the former, the *Kubrick* court noted that:

> We ... cannot hold that Congress intended that "accrual" of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff ... *armed with the facts about the harm done to him,* can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government. If there exists in the community a generally applicable standard of care with respect to the treatment of his ailment, we see no reason to suppose that competent advice would not be available to the plaintiff as to whether his treatment conformed to that standard. If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. *Of course, he may be incompetently advised or the medical community may be divided on the crucial issue of negligence. But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make.* If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case,

we discern *no sound reason for visiting* the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise *informed or himself determines to bring* suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury. (emphasis added) (footnotes omitted)

*Id.* at 123–24, 100 S.Ct. at 360–361.

■ Despite the holding in *Kubrick,* DeGirolamo contends that the facts herein are distinguishable in that he never received treatment from any physicians other than VA doctors from 1975 to 1979. Moreover, Dr. Smith and the other VA doctors advised him that his post-operative condition was normal and that the menisectomy was properly performed. Since these VA doctors, who were the only treating physicians, failed to deny "specifically any wrong-doing, negligence or malpractice in the care and treatment" of this plaintiff, (Plf.Memo. of Law at 12), DeGirolamo maintains that the defendants should bear the responsibility of misleading him and thereby delaying the commencement of this action. If this position were accepted, the natural corollary would make it incumbent upon the VA doctors to admit their acts of malpractice. No court can force a Government defendant to admit its malfeasance or suffer the consequences, to wit, toll the statute of limitations until an injured party has actual notice that a particular act constituted malpractice. This would clearly expand the circumstances under which the Government could be sued, and since any exceptions to the Government's waiver of sovereign immunity must be strictly observed, *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957), such a result will not be countenanced by this court.

■ Moreover, DeGirolamo misreads the Supreme Court's holding in *United States v. Kubrick, supra,* in that he seems to seek a postponement of the accrual date until the time when he was aware that his injury

was negligently inflicted. This reasoning was specifically set aside by the *Kubrick* court and therefore must be rejected by this court. DeGirolamo had knowledge of both the injury and the cause of that injury in late 1976 after he had consulted private physicians and filed his reimbursement application. Since he filed his claim on May 18, 1979, any cause of action which accrued prior to May 19, 1977 is barred by the statute of limitations in 28 U.S.C. § 2401(b). *Robbins v. United States,* 624 F.2d 971 (10th Cir. 1980); *Waits v. United States,* 611 F.2d 550 (5th Cir. 1980).

 DeGirolamo also seeks to toll the statute of limitations on equitable principles in light of the fraud, misrepresentation and concealment on the part of the VA doctors. (Plf.Memo. of Law at 14) It has been noted that "strong equitable considerations notwithstanding, the two-year period of 28 U.S.C. § 2401(b) cannot be tolled or waived", *Lien v. Beehner,* 453 F.Supp. 604, 606 (N.D.N.Y.1978) (cases cited therein). Without addressing the question whether equitable principles can be used to toll the statute of limitations, this court finds no basis to even consider this application. Since the plaintiff had failed to show any fraud, misrepresentation or concealment, the request for a toll on an equity theory must be denied since the very underpinnings of that request are not present.

Although the majority of DeGirolamo's claims are barred by the statute of limitations, there are questions regarding his post-operative care which remain. As noted above, DeGirolamo filed suit on May 18, 1979 and as a result of the statute of limitations, any claim which accrued prior to May 19, 1977 is barred. DeGirolamo, however, received treatment at the VAPP and the VAOC after May 19, 1977 and his pleadings allege acts of malpractice during this period concerning the treatment received. It is not clear to this court what those acts are because neither the Government nor the plaintiff specifically addressed this time period in their respective summary judgment papers. The court does not, therefore, render any opinion at this point either ac-

knowledging or dismissing any malpractice claims regarding post-operative care received at VAPP and the VAOC which accrued after May 19, 1977.

DeGirolamo's malpractice claims which accrued prior to May 19, 1977 and include any claims relating to the menisectomy and the treatment received by Dr. Smith in the fall of 1976 are hereby dismissed. The motion to dismiss any cause of action which accrued on or after May 19, 1977 is denied without prejudice.

So Ordered.