**Raymond KELLY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 80 C 16.**

United States District Court, E.D. New York.

Jan. 10, 1983.

Glaser, Shandell & Blitz, New York City (David D. Glass, New York City, of counsel), for plaintiff.

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Beryl R. Jones, Asst. U.S. Atty., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

This is an action for medical malpractice brought in 1980 under the Federal Tort Claims Act. The action is based on 28 U.S.C. § 2674, and jurisdiction on 28 U.S.C.

§ 1346(b). The government has moved for summary judgment on the grounds that the action is barred by the time limitations set forth in 28 U.S.C. § 2401. That section prohibits the court from taking jurisdiction unless those time limitations are met. *Hammond v. United States,* 388 F.Supp. 928 (E.D.N.Y.1975); *see also Frey v. Woodard,* 481 F.Supp. 1152 (E.D.Pa.1979) (citing cases). Accordingly, the motion is deemed addressed to the subject matter jurisdiction of the court. *See* F.R.C.P. 12(h)(3).

In October 1964, plaintiff entered a Veterans Administration ("VA") hospital in the Bronx, suffering from a duodenal ulcer which, it was thought, may have been bleeding. The doctors performed a hemigastrectomy and a vagotomy on October 23, 1964. A subhepatic abcess developed, and on November 9, 1964, the doctors performed a further operation to drain the resulting phlegma. Plaintiff was transferred that month to the hospital's psychiatric ward and treated for an obsessive personality disorder. He was discharged on February 9, 1965.

Plaintiff claims that he was given three different explanations for the performance of the second operation: A Dr. Oxman said it was to "scrape the pancreas," on which the first operation had revealed scar tissue. A Dr. Weiss said that "Dr. Oxman punctured the pancreas in the first operation." A Dr. Smith said that "the stitches hadn't been pulled tight enough on the first operation." Defendant concedes that as a result of the surgical procedures performed at the VA hospital, plaintiff suffers from the "extremely unpleasant" gastrointestinal side effect known as "dumping syndrome."

Plaintiff claims that he "continued to seek medical care from the V.A. up to and including 1977," and says that he "sought treatment" for his gastrointestinal problems from a private doctor, Howard Frucht, from March 9, 1965 until September 24, 1973. In addition, plaintiff says that he sought treatment of sexual problems from a Dr. Porter and that the VA referred him for treatment of psychiatric problems to a Dr. Gabriele.

Plaintiff alleges in his complaint that he received negligent treatment both during his hospitalization for surgery and "in follow-up care for both physical and psychiatric injuries up to and including 1977." He also alleges that "he was not competent to know or understand the circumstances under which he was damaged" including "the nature of his injuries and the cause thereof."

The relevant statute, 28 U.S.C. § 2401(b), provided in pertinent part (prior to an amendment effective January 18, 1967), that "[a] tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues ... or unless, if it is a claim not exceeding $2500, it is presented in writing to the appropriate Federal agency" within two years after the claim "accrues" and suit is brought within six months of denial by the agency. Act of June 25, 1948, ch. 646, § 2401, 62 Stat. 869, 971; Act of Apr. 25, 1949, ch. 92, 63 Stat. 62; Act of Sept. 8, 1959, Pub.L. No. 86–238, 73 Stat. 471. The amendment effective January 18, 1967 provides, so far as pertinent, that "a tort claim shall be forever barred unless presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months ... of notice of final denial of the claim by the agency." Act of July 18, 1966, Pub.L. No. 89–506, § 7, 80 Stat. 306, 307.

The government contends that plaintiff's claim "accrued" in 1965 because by then he had discovered the nature and cause of his injuries. In the alternative the government urges that if plaintiff's claim accrued after January 18, 1967, the effective date of the amendment, the action is barred by his failure to file an administrative claim within two years of accrual. Plaintiff argues that the claim did not accrue until much later, or that the statute was tolled, for three independent reasons. First, plaintiff relies on the "continuous treatment" doctrine. Second, he says that from 1966 to 1977 he in fact filed administrative claims. Third, he argues that the statute was tolled by his mental incompetency.

█ A medical malpractice claim generally accrues under the Federal Tort Claims Act when the patient has learned or should have learned, in the exercise of appropriate diligence, of the existence of his injuries and their cause by the acts or omissions of the defendant, whether or not he has reason to believe that he has an actionable claim. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Lee v. United States,* 485 F.Supp. 883, 886–71 (E.D.N.Y.1980). Plaintiff suggests that the holding of the *Kubrick* case, that the claim accrues even if the plaintiff may be unaware that there has been an actionable wrong, should not be applied retroactively to this case. That contention is clearly without merit. Several factors must coincide to justify applying the *Kubrick* holding merely prospectively. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). Only one is present here. Perhaps the *Kubrick* opinion "decid[ed] an issue of first impression whose resolution was not clearly foreshadowed," *id.* at 106, 92 S.Ct. at 355. But retrospective operation will further the policies disfavoring stale claims. And if a *bona fide* claim is barred, that commonly arises when a statute of limitations is applied. Plaintiff cannot claim that he was prejudiced by reliance on settled law. The cases overruled by the decision were not decided until after the period in question. *See* 444 U.S. at 121 n. 8, 100 S.Ct. at 359 n. 8.

The government's papers compel the conclusion that plaintiff was aware of the nature and cause of his primary injury at least as early as 1966. A report by Dr. H.J. Lindenauer dated February 11, 1965 states that plaintiff "volunteers the information that he now suffers from a 'dumping' syndrome since surgery and eats six meals a day." Plaintiff's awareness that the operations caused injury is even more clearly reflected in a letter from him to J.D. Norton dated July 20, 1966: "Due to side effects of my two operations for a service connected ulcer, I find that carrying large size pipes and wire, or pulling same, I get exausted [sic] very easily and go into what

is called 'dumping' and that night and the next day, diarrhea." Plaintiff does not take issue with these documents or their import.

The claim therefore accrued certainly no later than July 20, 1966, and the pre-amendment version of 28 U.S.C. § 2401(b) applies. Act of July 18, 1966, Pub.L. No. 89–506, § 10, 80 Stat. 306, 308. Therefore, unless the case comes within an exception urged by plaintiff the claim with respect to injury due to the operations is barred because action was not commenced until 1980, more than two years after accrual.

█ Plaintiff contends that the statute was tolled by reason of New York's "continuous treatment" doctrine. It is federal law, however, that determines whether and how that doctrine applies to actions based on the Federal Tort Claims Act. *Kossick v. United States,* 330 F.2d 933 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 72, 13 L.Ed.2d 44 (1964). The doctrine has been favorably mentioned, *id.* at 936, but this court has not found it embodied in any federal law holding. The cases typically assume its existence and find it inapplicable on the facts. There is no need to do more here.

Two rationales have been offered for the continuous treatment doctrine. One is that a reasonably diligent patient can hardly be expected to discover the cause of his injuries while under the continuing care of a negligent doctor. The doctor may be tempted to conceal from the patient things he should know. *Ashley v. United States,* 413 F.2d 490 (9th Cir.1969). Moreover, as one case put it, "one is presumed to repose confidence in the individual doctor to whom he entrusts his medical problems" and "the confidential relationship excuses the making of inquiry which questions the care which has been or is being given during the existence of the relationship." *Brown v. United States,* 353 F.2d 578 (9th Cir.1965). In addition, to the extent that investigation would interrupt care, it might be too great a burden to ask of even the reasonably assiduous patient. *Tyminski v. United States,* 481 F.2d 257, 264 & n. 5 (3d Cir. 1973).

At most, this kind of reasoning supports an inference from the premise of continuous treatment to the conclusion that the patient is excused from making more diligent inquiry as to the nature or cause of his injuries. As so formulated the continuous treatment doctrine is not an exception to the requirement of reasonable diligence set forth in the *Kubrick* case but rather a factor in determining whether that requirement has been met. Several courts have held the doctrine inapplicable when the patient knew the acts resulting in his injuries. *E.g., Tyminski v. United States, supra; DeGirolamo v. United States,* 518 F.Supp. 778, 781 (E.D.N.Y.1981); *see also Modave v. Long Island Jewish Medical Center,* 501 F.2d 1065, 1079 n. 15 (2d Cir.1974) (citing state cases). Since plaintiff knew the cause of his primary injury no later than July 20, 1966, the continuous treatment doctrine is unavailing insofar as it is based on an excuse for failing to ascertain the cause of injury.

The other theory offered to support the doctrine is that " '[i]t would be absurd to require a wronged patient to interrupt corrective efforts' " by serving the United States Attorney with a summons. *Kossick v. United States, supra,* 330 F.2d at 936 (quoting *Borgia v. City of New York,* 12 N.Y.2d 151, 156, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962)). So justified, the doctrine could apply to patients with knowledge of the effects, and even the negligence, of the doctor's acts. At least one court has expressly disapproved this rationale. *Tyminski v. United States, supra,* 481 F.2d at 264 n. 5.

In any event, the "interruption" theory presupposes more continuity of treatment than was present here. Plaintiff does not say that he was cared for after 1965 by any of the doctors claimed to be responsible for his primary injury. Plaintiff claims to have sought treatment "for his psychiatric injuries at various V.A. facilities from 1966 to 1977." His Statement in Support of Claim dated January 23, 1975 says only that he was an out-patient at the Northport VA hospital and was being treated by Dr. Gabriele. Plaintiff argues that it is sufficient that "he continued to go to a facility owned and operated by the Government." That contention has been consistently rejected. *See, e.g., Camire v. United States,* 535 F.2d 749, 750 (2d Cir.1976); *DeGirolamo v. United States, supra.*

The danger of interrupting treatment is even less when the patient is under the care of private doctors at the same time. *See Mortensen v. United States,* 509 F.Supp. 23, 30 (S.D.N.Y.1980). Here it appears that from 1965 to 1973 plaintiff was relying for treatment of his dumping syndrome chiefly on Dr. Frucht. He was seeing private doctors for his other complaints as well. It does not matter whether he changed government doctors, or was referred to a private doctor, only at the VA's behest. What is significant is that when plaintiff's care was assumed by new government doctors and private doctors, he would not have jeopardized that care by filing suit.

Plaintiff's argument that he filed appropriate administrative claims from 1966 to 1977 is belied by the copies of the purported claims that are attached to the papers submitted on his behalf. A claim governed by the pre-amendment version of § 2401 tolls the statute only if it is for $2500 or less. *Powers v. United States,* 390 F.2d 602 (9th Cir.1968). If no specific amount is requested, the provision does not apply. *See Johnson v. United States,* 404 F.2d 22 (5th Cir. 1968). The only such "claim" that contains a monetary amount is plaintiff's Appeal to the Board of Veteran Appeals dated January 12, 1967. Plaintiff wrote, "I can send you photostatic copies of my income statements to prove that because of my service connected disability, I am losing over eight thousand dollars a year.... I feel that I must be compensated for my extenuating medical problems, inabilities and loss of income...." This statement shows that even if plaintiff had stated the amount of his claim, it could not have received administrative consideration. Moreover, all the submitted documents are claims for veterans' benefits. None gives notice of a tort claim.

■ Mental incompetency generally does not toll the statute of limitations of the Federal Tort Claims Act. *Accardi v. United States,* 435 F.2d 1239 (3d Cir.1970); *cf. Kalil v. United States,* 107 F.Supp. 966 (E.D.N.Y.1952). There may be an exception when the mental condition bears on plaintiff's ability to understand the nature and cause of his injuries. *See Zeidler v. United States,* 601 F.2d 527 (10th Cir.1979). *But see id.* at 532 (dissent). But plaintiff's statements of 1965 and 1966 clearly reflect such an understanding.

From what has been said it follows that plaintiff's claims based on the 1964 operations are barred and that this court lacks subject matter jurisdiction. The complaint is therefore dismissed. It is not clear from the complaint or from plaintiff's papers submitted on the motion whether he is claiming damages for further acts of malpractice committed after the operations. The papers certainly do not spell out what those acts were. However, plaintiff is given leave to file an amended complaint, within thirty days of the filing of this memorandum and order, asserting any claims he may have for any such further acts of malpractice.

So ordered.