John T. ULRICH, Plaintiff–Appellant,
Cross–Appellee,

v.

VETERANS ADMINISTRATION HOSPI-
TAL and United States of America, De-
fendants–Appellees, Cross–Appellants.

Nos. 954, 1055, Dockets
87–6291, 88–6029.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1988.

Decided Aug. 17, 1988.

Robert B. Nichols, Buffalo, N.Y. (Paul William Beltz, P.C., Buffalo, N.Y., of counsel), for plaintiff-appellant, cross-appellee.

Kathleen M. Mehltretter, Asst. U.S. Atty., W.D.N.Y., Buffalo, N.Y. (Roger P. Williams, U.S. Atty., of counsel), for defendants-appellees and cross-appellants.

Before CARDAMONE, PRATT and MAHONEY, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiff John T. Ulrich appeals from the December 1, 1987 judgment and modified order of the United States District Court for the Western District of New York (Curtin, J.), which awarded him damages for injuries incurred at defendant Veterans Administration (VA) Hospital. The VA and the United States cross-appeal from the district court's January 14, 1980 order denying their motion to dismiss plaintiff's complaint on statute of limitations grounds. In its December 1, 1987 order the district court decreased Ulrich's original award for past and future pain and suffering because of certain VA benefits the plaintiff already was receiving. Because in this case the diminishment improperly took away with one hand what had been rightly given with the other, it may not be sustained.

## FACTS

Ulrich was classified in 1971 as a 100 percent disabled veteran as a result of service-related catatonic schizophrenia. He entered the Psychiatric Service division of the VA Hospital in Buffalo, N.Y. (VA Buffalo) on May 5, 1976 for treatment related to this disability. On or about May 7, 1976—two days after being admitted—Ulrich fell or jumped from a smoke stack on hospital property and suffered serious injuries. He was taken to the Emergency Room at VA Buffalo, where doctors performed emergency surgery. Plaintiff remained hospitalized in the care of the surgical staff until July 22, 1976, when he transferred to another VA hospital for rehabilitative therapy. As a result of his fall, Ulrich is now a paraplegic with loss of bowel and bladder control.

Prior to the May 7, 1976 incident, Ulrich received VA benefits pursuant to 38 U.S.C. § 314(j) (1982 & Supp. IV 1986) on account of his total mental disability. On November 4, 1976 the VA reviewed those benefits and found the paraplegia and related medical problems to be "disabilit[ies] directly due to and proximately the result of" Ulrich's service-related psychiatric disability and therefore substantially increased his benefits under § 314(o), retroactive to the

date of the accident. The VA estimates the value of these added disability benefits, calculated in light of a 30–year life expectancy, to be $361,800. The VA also awarded plaintiff a sum to be used for home health services ("Aid and Attendance allowance") under § 314(r). Further, plaintiff now qualifies for other ancillary VA benefits, such as sums to be applied toward the purchase of a home and car, as well as their adaptive modifications. As of April 1987 Ulrich had received, according to the government, an additional $192,921 in total benefits resulting from the VA's reclassification of his status.

On July 14, 1978 plaintiff submitted a formal notice of claim to the VA and the claim was denied as untimely. On February 5, 1979, he commenced the instant action against the defendants Veterans Administration Hospital and the United States in the Western District of New York pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2401–2416 (1982). In his complaint plaintiff alleged that the defendants' negligence was the proximate cause of his paraplegia. The trial court originally granted defendants' motion to dismiss the complaint, but after reconsideration denied defendants' motion and reinstated the complaint. It is this January 14, 1980 order from which the government cross-appeals.

After a bifurcated non-jury trial, the district court found defendants liable for plaintiff's May 7, 1976 injuries based upon the VA's failure to supervise him following admission to the Psychiatric Service of VA Buffalo. On May 14, 1987 the trial court awarded Ulrich $500,000 for past and future pain and suffering, of which $125,000 was allocated to past pain and suffering and $375,000 to future pain and suffering. It made no award for past or future wages or past medical expenses, but did request more information from the parties as to plaintiff's future medical expenses.

On December 1, 1987 the trial court modified its previous order and issued its final judgment and order. In light of *Rufino v. United States*, 829 F.2d 354 (2d Cir.1987), it stated that the pain and suffering award also reflected an award for plaintiff's loss

of enjoyment of life. Taking into account the extra VA benefits that Ulrich received and will receive due to his injury, the court then reduced the May 14th $500,000 pain and suffering award to $125,000: $15,625 for past pain and suffering; $15,625 for past loss of enjoyment of life; $46,875 for future pain and suffering; and $46,875 for future loss of enjoyment of life. It held further that plaintiff's increased benefits were sufficient to cover his future medical needs and therefore refused to make an award for future medical expenses. The $125,000 award was discounted by the standard two percent rate. Ulrich appeals from the December 1, 1987 order.

## DISCUSSION

The defendants' liability for the May 7, 1976 fall and the ensuing paraplegia is not contested on appeal. Rather, Ulrich challenges the court's reduction of the original $500,000 pain and suffering award to $125,000. He also argues that it was error to refuse to award any damages for future medical expenses. The VA and the United States contend that the trial court erred in denying their motion to dismiss the plaintiff's complaint on statute of limitations grounds. We first consider defendants' contention.

### I  Statute of Limitations

■ A cause of action under the FTCA must be brought within two years after the claim accrues. 28 U.S.C. § 2401(b) (1982). Federal law determines when the period of limitations in § 2401(b) begins to run. *Kossick v. United States,* 330 F.2d 933, 934–35 (2d Cir.), *cert. denied,* 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964); *Kelly v. United States,* 554 F.Supp. 1001, 1003 (E.D.N.Y.1983). Ulrich was injured on May 7, 1976 and filed his initial administrative claim with the VA more than two years later on July 14, 1978. The district court held that although the FTCA claim accrued on the date of injury, the statute of limitations was tolled under the "continuous treatment doctrine" until July 22, 1976 —the date of Ulrich's discharge from VA Buffalo—and that his claim therefore was timely.

An FTCA action accrues when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury. *See United States v. Kubrick,* 444 U.S. 111, 122–25, 100 S.Ct. 352, 359–61, 62 L.Ed.2d 259 (1979). Nonetheless, a number of courts—including our own— have recognized that where the plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA cause of action arose, the statute of limitations may be tolled under certain circumstances until the end of the course of treatment. *See, e.g., Wehrman v. United States,* 830 F.2d 1480, 1485–86 (8th Cir. 1987); *Otto v. National Inst. of Health,* 815 F.2d 985, 988 (4th Cir.1987); *see also Kossick,* 330 F.2d at 936 (discussing in dicta application of doctrine).

Two rationales support the "continuous treatment doctrine." One rationale is that it is not reasonable to expect a patient who is in the continuing care of a doctor to discover that the doctor's acts may be the cause of his injuries. *See Kelly,* 554 F.Supp. at 1003. This rationale in turn rests on four interrelated concerns. First, during treatment a negligent doctor may conceal important information from a patient. *Ashley v. United States,* 413 F.2d 490, 493 (9th Cir.1969); *Kelly,* 554 F.Supp. 1003. Second, the confidential relationship that exists between doctor and patient might inhibit the patient from questioning the care given during the existence of the relationship. *Brown v. United States,* 353 F.2d 578, 580 (9th Cir.1965); *see Otto,* 815 F.2d at 988; *Kelly,* 554 F.Supp. at 1003; *Barrella v. Richmond Memorial Hosp.,* 88 A.D.2d 379, 383, 453 N.Y.S.2d 444 (2d Dept. 1982). Third, the chance that investigating the cause of an injury will interrupt care weighs against requiring a patient to discover an injury during a course of continuous treatment. *Tyminski v. United States,* 481 F.2d 257, 264 & n. 5 (3d Cir. 1973); *Kelly,* 554 F.Supp. at 1003. Finally, the rationale is supported by the need for flexibility in determining the cause of a latent injury. *Barrella,* 88 A.D.2d at 383, 453 N.Y.S.2d 444. This first rationale is in large part consistent with the determina-

tion of when a FTCA claim accrues under the *Kubrick* rule because a patient who has innocently entrusted his well-being to a negligent health care provider may not in fact discover the existence or cause of his injuries during the period of treatment. *See Reilly v. United States*, 513 F.2d 147, 150 (8th Cir.1975); *Tyminski*, 481 F.2d at 264 n. 5; *Ashley*, 413 F.2d at 492–93; *Kelly*, 554 F.Supp. at 1003–04.

The second rationale for the doctrine holds it absurd to expect a patient being treated by a doctor or hospital to interrupt corrective treatment by instituting suit against either while under their continuing care. *Borgia v. City of New York*, 12 N.Y.2d 151, 156, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962), *quoted with approval in Kossick*, 330 F.2d at 936; *see Kelly*, 554 F.Supp. at 1004; *Barrella*, 88 A.D.2d at 383, 453 N.Y.S.2d 444. The patient's relationship with those caring for him is based upon trust in their medical skills. Where corrective treatment is needed, it often would be so plainly contrary to the patient's own interests in his cure and recovery to disrupt his relationship by serving a summons and complaint on those caring for him as to make the requirement to sue nonsensical. *See Otto*, 815 F.2d at 988; *Barrella*, 88 A.D.2d at 383, 453 N.Y.S.2d 444.

Admittedly, the first—or unreasonableness of having to discover the cause—rationale for applying the doctrine may not be persuasive where, as here, the gravity of Ulrich's injury was sufficient to alert him to the injury and its cause, *see, e.g., Reilly*, 513 F.2d at 150, though here notice to plaintiff must be discounted by his total mental disability. However, we think the second—or interrupting corrective treatment by suit—rationale justifies application of the doctrine in this case. VA Buffalo began corrective efforts immediately after Ulrich's fall. The corrective treatment period was relatively brief—less than three months—as well as intensive and continuous, given the severity of the injuries. *Cf. Dundon v. United States*, 559 F.Supp. 469, 473 (E.D.N.Y.1983) (statute not tolled where plaintiff was treated intermittently over seven-year period by different physi-

cians in different departments of different VA hospitals); *DeGirolamo v. United States*, 518 F.Supp. 778, 780–81 (E.D.N.Y. 1981) (statute not tolled by intermittent treatment for nearly three years and claimant's knowledge of his injury and its causes). Given these circumstances, it would be absurd to require Ulrich to interrupt VA Buffalo's corrective treatment in order to commence legal proceedings.

The defendants contend that the continuous treatment doctrine does not apply because Ulrich was transferred immediately after his injury from the negligent Psychiatric Service division of VA Buffalo to the Surgical Service division of the same hospital. *See Dundon*, 559 F.Supp. at 473 (change of physicians and departments). Thus, they argue, plaintiff left the care and treatment of the negligent actor (Psychiatric Service) on May 7, 1976.

We decline to read the requirement of continuous treatment so narrowly. In the case at bar, it was the hospital that was the named defendant and alleged tortfeasor; it was not a particular division of the hospital that was named. Throughout the entire period of hospital confinement Ulrich was physically located in the named hospital and treated continuously by VA Buffalo doctors. *See Camire v. United States*, 535 F.2d 749, 750 (2d Cir.1976) (rejecting doctrine "since the treatment was not continuous by the same doctor (or an associate) *or the same hospital* for the required period") (emphasis added). That the Psychiatric Service's negligence required the corrective efforts of specialists in another medical area of the same institution is hardly a reason to refuse to apply the doctrine.

Hence, although Ulrich's FTCA cause of action accrued on May 7, 1976, his continuous treatment at VA Buffalo tolled the statute of limitations until July 22, 1986—the day he was discharged from VA Buffalo. Accordingly, we affirm the district court's ruling that plaintiff's action was not time-barred.

II *Damages*

A. *Pain and Suffering Award*

■ We next discuss plaintiff's damages claims. Damages in FTCA actions are de-

termined by the law of the state in which the tort occurred. *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962); *Klein v. United States*, 339 F.2d 512, 515 (2d Cir.1964). Generally, under New York law a plaintiff may recover his loss of earnings, medical expenses, and mental and physical pain and suffering. *See* 36 N.Y.Jur.2d *Damages* § 57, at 102–03 (1984).

As noted earlier, the district court initially awarded Ulrich $500,000 for past and future pain and suffering related to his paraplegia, but reduced that award to $125,000 in its final judgment and order. The reason for the $375,000 reduction, the district judge explained, was the court's "[t]aking into account the additional Veterans Administration Benefits plaintiff has received and will receive as a direct result of his accident." The district court also stated—we think inconsistently—that Ulrich's pain and suffering award was *not* subject to set-off by his increased VA benefits.

Regardless of the terminology it used when fixing the pain and suffering award, when the trial court "took into account" plaintiff's increased VA benefits it effectively set off those benefits against the original $500,000 pain and suffering award. The $375,000 reduction was roughly equivalent to the value of Ulrich's increased § 314(*o*) benefits. Yet, the only statutory authority that arguably supports a set-off of increased VA benefits against a pain and suffering award is not applicable here.

Congress has provided that an increase in government disability benefits accruing to a plaintiff as a result of his injuries should be set off against any damages awarded him when those benefits are awarded under 38 U.S.C. § 351 (1982 & Supp. IV 1986).[1] Although throughout much of the trial the court assumed that § 351 applied, the government unequivocally informed the court before the final determination of damages that § 351 did not apply because Ulrich's increased disability benefits were awarded pursuant to 38 U.S.C. § 314(*o*), (r)(1) (1982 & Supp. IV 1986). Congress does not provide for benefits awarded under § 314 to be set off against any other sums awarded to a plaintiff. Thus, unlike § 351 benefits, there is no statutory authority for setting off § 314 benefits against plaintiff's pain and suffering award.

Moreover, plaintiff's increased § 314 benefits are not the "equivalent" of pain and suffering damages, a circumstance which might justify a set-off. *See Brooks v. United States*, 337 U.S. 49, 53–54, 69 S.Ct. 918, 920–21, 93 L.Ed. 1200 (1949) (indicating that set-off might be appropriate where tort damages are the "equivalent of elements taken into account in providing disability payments"); *Pike v. United States*, 652 F.2d 31, 34 (9th Cir. 1981) (set-off appropriate only where benefits are intended to compensate for same element of damages as FTCA award); *Mosley v. United States*, 538 F.2d 555, 561 (4th

1. Section 351 provides in full:

    § 351. Benefits for person disabled by treatment or vocational rehabilitation

    Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded under any of the laws administered by the Veterans' Administration, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, ag-

    gravation, or death were service-connected. Where an individual is, on or after December 1, 1962, awarded a judgment against the United States in a civil action brought pursuant to section 1346(b) of title 28 or, on or after December 1, 1962, enters into a settlement or compromise under section 2672 or 2677 of title 28 by reason of a disability, aggravation, or death treated pursuant to this section as if it were service-connected, then no benefits shall be paid to such individual for any month beginning after the date such judgment, settlement, or compromise on account of such disability, aggravation, or death becomes final until the aggregate amount of benefits which would be paid but for this sentence equals the total amount included in such judgment, settlement, or compromise.

    38 U.S.C. § 351 (Supp. IV 1986).

Cir.1976) (same); *Hale v. United States,* 416 F.2d 355, 360–61 (6th Cir.1969) (same); *Powers v. United States,* 589 F.Supp. 1084, 1107 (D.Conn.1984) (same); *see also Christopher v. United States,* 237 F.Supp. 787, 799 (E.D.Pa.1965) ("Certainly pain and suffering has no bearing on what disability rating a veteran will receive and could not be construed to be a duplication of benefits."). It is clear from the statutory scheme that increased § 314 benefits are intended to compensate a veteran for his loss of earning capacity, not for pain and suffering. For example, impairment ratings used for calculating the amount of § 314 benefits due a disabled veteran are "based, as far as practicable, upon the average impairments of earning capacity." 38 U.S.C. § 355 (Supp. IV 1986). A VA claims examiner also testified at trial that Ulrich's increased § 314 benefits were intended only to compensate for his loss in earning capacity.

From this it is evident that the district court's set-off of the § 314 benefits against Ulrich's pain and suffering award took from him a benefit to which he was rightfully entitled. Thus, it was error. Accordingly, the $125,000 award for past and future pain and suffering must be reversed and the district court's original $500,000 award for these damages reinstated.

■ Further, plaintiff is not entitled to an additional award for loss of enjoyment of life, since the trial judge permissibly took into account Ulrich's loss of enjoyment of life in assessing his damages for pain and suffering. *See McDougald v. Garber,* 135 A.D.2d 80, 88–94, 524 N.Y.S.2d 192 (1st Dept. 1988) ("[L]oss of enjoyment of life may be measured in damages in New York as an element of pain and suffering."). Yet, the award of $500,000 for pain and suffering must be remanded solely for the purpose of allowing the district court to discount that award to present value in accordance with our opinion in *Metz v. United Technologies Corp.,* 754 F.2d 63, 66–68 (2d Cir.1985). *See Oliveri v. Delta S.S. Lines, Inc.,* 849 F.2d 742, 745–52 (2d Cir.1988); *Doca v. Marina Mercante Nicaraguense, S.A.,* 634 F.2d 30, 40 (2d Cir.1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981).

B. *Future Medical Expenses*

■ Ulrich next urges that the district court erred in refusing to award future medical expenses. Why the court turned down his request for this item of damages is unclear. The court first noted "that plaintiff will receive medical care, hospitalization, and, if necessary, institutionalization from the Veterans Administration at no charge. Consequently, there will be no award to plaintiff for such services." Beyond this, the trial court held that the VA's "Aid and Attendance allowance" adequately covered the cost of personal home care services recommended by a rehabilitation counselor. On appeal, defendants argue that the court's reason for not making an award was because Ulrich failed to provide sufficient evidence of his future medical costs. Plaintiff does not contest the set-off of the aid and attendance allowance with his home care service needs. What he does contend is that he was denied an award of future medical expenses in part because the trial court believed the VA will provide him with free medical care in the future. *See* 38 U.S.C. § 610 (1982 & Supp. IV 1986).

After trial on liability and the closing of the record on damages by consent, the district court accepted into evidence a letter from a rehabilitation counselor which suggested what rehabilitative care Ulrich might require in the future. This effectively reopened the record regarding future expenses for treatment of plaintiff's paraplegia. The government tacitly acknowledges in its brief that these needs might be substantial: during the period from April 1986 to April 1987 plaintiff was hospitalized for 133 days, suggesting a high probability that plaintiff will require more hospitalization for treatment related to his paraplegia in the future. Ulrich subsequently submitted a letter from the Erie County Home and Infirmary which indicated that skilled institutionalized care would cost $109 per day.

Nonetheless, since the trial court never expressly decided whether or not it based

its refusal to award future medical expenses on Ulrich's failure of proof, we also remand this issue for further proceedings. It should be pointed out that any award for future medical expenses should not be limited on the ground that, as a veteran, plaintiff is entitled to free VA medical care, hospitalization, and institutionalization. He is not obligated to seek medical care from the party whose negligence created his need for such care simply because that party offers it without charge. Moreover, it is not relevant that Ulrich has sought treatment from VA hospitals in the past. He has a right to select a doctor or private hospital of his own choice for his future medical needs. *Feeley v. United States,* 337 F.2d 924, 934–35 (3d Cir.1964); *Powers,* 589 F.Supp. at 1108–09; *Christopher,* 237 F.Supp. at 798–99. Thus, the district court's failure to award future medical expenses was erroneous *if and to the extent* it relied on the premise that the VA will provide plaintiff free care in the future. That this might result in a windfall for him is a matter for Congress, not the courts. *See Powers,* 589 F.Supp. at 1108–09.

## CONCLUSION

In sum, the trial court's ruling that plaintiff's FTCA complaint was not time-barred is affirmed. The $125,000 award for pain and suffering and loss of enjoyment of life is reversed and the original $500,000 award is reinstated and remanded to the district court for it to discount the award to present value. We remand the issue of future medical expenses for further proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.