Robert WAGNER, Plaintiff,

v.

CONSOLIDATED RAIL
CORPORATION,
Defendant.

No. 5:00–CV–216(FJS/GJD).

United States District Court,
N.D. New York.

June 4, 2002.

Office of Michael P. Marmor, Fayetteville, NY, Michael P. Marmor, of counsel, for Plaintiff.

Hodgson Russ LLP, Albany, NY, Theresa J. Puleo, of counsel, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiff commenced this action under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), on February 3, 2000, and filed an amended complaint on December 7, 2000. Plaintiff claims that he sustained occupational injury, namely bronchial asthma, due to his exposure to toxic substances while in Defendant's employ. Plaintiff further alleges that Defendant was negligent in failing to provide him with a reasonably safe place to work by allowing him to be exposed to various toxic substances and in failing to warn him of such exposures.

Presently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant's motion rests entirely upon its contention that Plaintiff's

complaint is barred by the FELA's three-year statute of limitations. *See* 45 U.S.C. § 56. The Court heard oral argument in support of, and in opposition to, this motion on December 27, 2001, and reserved decision at that time to provide the parties with an opportunity to submit additional case law to support their respective positions.[1] The following constitutes the Court's resolution of the pending motion.

## II. BACKGROUND

Plaintiff worked for Defendant and its predecessors from July 1955 until December 31, 2000, when he retired. Plaintiff began working for the railroad as a brakeman, and from 1972 until the date of his retirement he worked as an engineer. Plaintiff believes that during the time he was employed with Defendant he worked around the following things, which were harmful to him: brake shoes, diesel fuel oil, grinders, sand and ballast.

According to his medical records, Plaintiff was first diagnosed with and treated for bronchial asthma in May 1985. At that time, Plaintiff was admitted to Crouse Irving Memorial Hospital due to an acute asthma attack. Admitting records indicate that Plaintiff was diagnosed with bronchial asthma and that Plaintiff was asked numerous questions about, among other things, where he worked and the environment in which he worked. At that time, Plaintiff's physician did not discuss with him the cause of his breathing condition; nor did he discuss precautions that Plaintiff could take to avoid future problems.

Plaintiff contends that in 1985 he was not concerned that his employment was the cause of his breathing problems. After 1985, Plaintiff experienced asthma attacks on several occasions that occurred "in bouts." However, nothing in particular appeared to trigger an attack; nor did Plaintiff ever experience an attack at work until the day before his attack in 1998.

Plaintiff began treating with Dr. Davin, a pulmonary specialist, on January 1, 1998. Plaintiff asserts that, as a result of his discussions with Dr. Davin, he came to believe that his work was affecting his breathing. Prior to that time, Plaintiff contends that no other physician had ever told him that his work could be the cause of his breathing problems; nor did any other physician advise him to discuss his breathing problems with his employer.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 (quotation and footnote omitted); *see* Fed. R.Civ.P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, . . ."). To meet this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the materi-

---

1. Although the Court provided the parties with the opportunity to submit additional case law, neither party took advantage of this opportunity.

al facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). "Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment." *Fincher v. County of Westchester*, 979 F.Supp. 989, 995 (S.D.N.Y.1997) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990)). The court, however, must not weigh the evidence but instead is "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments[.]" *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir.1996) (citations omitted).

## B. The FELA's statute of limitations

The FELA provides that "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. In *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Supreme Court adopted a "discovery rule" to determine the date of accrual for situations in which "no specific date of contact with the substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time[.]" *Id.* at 170, 69 S.Ct. 1018 (quotation omitted). Under these circumstances, "the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substances manifest themselves[.]" *Id.* (quotation omitted). The Court subsequently applied this "discovery" rule to a negligence action brought under the Federal Tort Claims Act. *See United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). In *Kubrick*, the Court

refined the discovery rule, holding that a tort claim does not accrue until the plaintiff has discovered both his injury and its cause, but holding that accrual does not await the plaintiff's awareness that his injury was negligently inflicted. *Id.* at 120 n. 7, 122, 100 S.Ct. 352.

■ The Second Circuit has restated this discovery rule, holding that a claim accrues "when the plaintiff in the exercise of reasonable diligence knows both the existence and the cause of his injury." *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir.1988) (FTCA claim) (citing *United States v. Kubrick*, 444 U.S. 111, 122–25, 100 S.Ct. 352, 359–61, 62 L.Ed.2d 259 (1979)); *see also Anthony v. Consolidated Rail Corp.*, No. CIVA96–CV–1643RSPDH, 1998 WL 696288, *3 (N.D.N.Y. Sept.30, 1998) (citing cases applying the same standard to FELA claims). Under this formulation of the discovery rule, a plaintiff must "exercise reasonable diligence in discerning both the fact and cause of [his] injuries." *Anthony*, 1998 WL 696288, at *3 (citation omitted). Moreover, " '[b]oth components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause.' " *Id.* (quoting *Fries*, 909 F.2d at 1095) (citing *Urie*, 337 U.S. at 170, 69 S.Ct. 1018 (did plaintiff have reason to know he was injured at an earlier date) (other citation omitted)).

■ Although this rule benefits a plaintiff who is " 'blamelessly ignorant of the existence or cause of his injury[,]' " *id.* at *6 (quoting [*Barrett*, 689 F.2d at 327]) (citing *Stoleson*, 629 F.2d at 1269), it "also imposes on an injured plaintiff an affirmative duty to investigate the facts of his injury and its cause once alerted by symptoms." *Id.* (citing *Fries*, 909 F.2d at 1095). As the *Anthony* court explained, " 'to ap-

ply any other rule would thwart the purposes of repose statutes which are designed to apportion the consequences of time between plaintiff and defendant and to preclude litigation of stale claims.'" *Id.* (quotation omitted). In other words,

> "[w]hat the *Urie* court did not do was provide an escape for plaintiffs who are aware [or should be aware] that some type of injury exists yet who choose to ignore it by failing to seek diagnosis and investigate the cause.... The tolling permitted by *Urie* only extends the limitations period to the date when the injury manifests itself, not beyond."

*Id.* (quoting *Fries,* 909 F.2d at 1095 (citation omitted)).

In the present case, Plaintiff does not dispute that he knew of his injury in 1985, when he was first diagnosed with bronchial asthma. However, he contends that there is an issue of fact as to when he knew or reasonably should have known the cause of his respiratory illness. To support this position, Plaintiff relies upon the fact that when he was treated at the emergency room of Crouse Irving Memorial Hospital on April 30, 1985, for respiratory difficulty, no reference was made in his medical records to his employment. Nor, according to Plaintiff, did any physician, prior to January 1998, indicate to him that the cause of his respiratory problem might be his employment.

To the contrary, Defendant asserts that when Plaintiff was treated for his first asthma attack in 1985, the admissions records and notes indicate that he was diagnosed with bronchial asthma and that he reported exposures to dust, fuel or diesel fumes and braking material in the context of his employment with Defendant. Defendant also notes that Plaintiff's deposition testimony indicates that he was concerned enough about breathing conditions in his work place in the 1970s to request a mask, which he routinely wore to combat dust while working around rail grinders on the railroad. Plaintiff also testified that as a result of his work as an Air Force safety supervisor in the 1980s, where he was "cross-trained in safety" and "got involved in the OSHA standards," he came to believe that brake shoes were dangerous.

■ The fact that a physician may not have specifically diagnosed the cause of Plaintiff's bronchial asthma until 1998 is not dispositive of the issue of when Plaintiff knew or should have known the cause of his injury. Plaintiff's deposition testimony clearly indicates that he had all the essential facts he needed to investigate whether his injury was caused by his employment once he was diagnosed with bronchial asthma in 1985. Plaintiff acknowledged that in the 1970s he requested a mask to protect him from the dust and that in the 1980s he came to believe that brake shoes were dangerous when he was cross-trained in safety and became aware of OSHA standards during his military service. This information together with his diagnosis of bronchial asthma in 1985 imposed upon Plaintiff an affirmative duty to investigate the cause of his illness. Having failed to make such an inquiry, Plaintiff cannot now rely upon the fact that no physician specifically informed him that his bronchial asthma might be caused by his employment until 1998 to extend the limitations period.

Applying the standards set forth in *Urie* and *Kubrick* to the facts in this case, the Court concludes that Plaintiff's FELA claim accrued at the latest in 1985, some fifteen years before he filed the present action. Accordingly, the Court holds that Plaintiff's FELA claim is barred by that statute's three-year limitations period.

## IV. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions and oral

arguments, and the applicable law, and for the reasons stated herein and at oral argument, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court is to enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**